IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MIRZA MOHAMMED ALI BAIG,               )
                                       )
            Petitioner,                )
                                       )
v.                                     )   Civil Action No. 3:07CV689-HEH
                                       )
RICHARD CATERISANO, *et al.*,          )
                                       )
            Respondents.               )


**MEMORANDUM OPINION**
**(Denying Respondents' Motion to Dismiss and Granting Motion to Remand)**

This matter is before the Court on Respondents' Motion to Dismiss pursuant to

Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, to Remand,

filed January 14, 2008. Both parties have filed memoranda of law in support of their

respective positions. The Court will dispense with oral argument because the facts and

legal contentions are adequately presented in the materials before the Court, and argument

would not aid in the decisional process. For the reasons stated herein, the Court will deny

Respondents' Motion to Dismiss and grant Respondents' Motion to Remand.

## I. Background

Petitioner, Mirza Mohammed Ali Baig, a lawful permanent resident of the United

States, filed an N-400 application for naturalization with the United States Citizenship

and Immigration Services ("USCIS") on September 12, 2005. On March 14, 2006,

Petitioner was interviewed by a USCIS officer and passed his English proficiency and

U.S. history examinations. On several subsequent occasions, Petitioner inquired as to the status of his case. USCIS could not, however, finish processing Petitioner's application because it had not yet received the results of a background check from the Federal Bureau of Investigation ("FBI").[1] For that reason, a final decision has not been made on Petitioner's application.

Frustrated by the more than two year delay in adjudicating his application, Petitioner filed a Petition for Writ of Mandamus with this Court on October 31, 2007, seeking to compel USCIS and other government agencies to rule on his pending application for naturalization. Specifically, Petitioner asks this Court to assume jurisdiction of this action and either: (1) order timely adjudication of his application for naturalization; (2) provide him with a Notice of Approval/Swearing in Notice; or (3) adjudicate his naturalization application.

On January 14, 2008, Respondents filed a Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, Respondents argue that this Court should remand the matter to USCIS to rule on Petitioner's application following the completion of all background and security checks.

## II. Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction, Petitioner in this case, has the burden of proving subject matter jurisdiction. *Richmond,*

---

[1] The request for this background check was received by the FBI on September 29, 2005, shortly after Petitioner's application was received by USCIS.

*Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*

### III. Analysis

**A. Respondents' Motion to Dismiss**

Petitioner asserts jurisdiction pursuant to 8 U.S.C. § 1447(b), the Mandamus Act (28 U.S.C. § 1361), and the Administrative Procedure Act (5 U.S.C. § 702 *et seq.*). Because the Court finds that it has jurisdiction under 8 U.S.C. § 1447(b), the Court will deny Respondent's Motion to Dismiss.

As outlined by § 1447(b), an applicant for naturalization may apply to a U.S. District Court for a hearing when "there is a failure to make a determination under [8 U.S.C. § 1446] before the end of the 120-day period after the date on which the examination is conducted under such section." 8 U.S.C. § 1447(b).  If a proper petition is filed, a "[district] court has jurisdiction over the matter." *Id.*  Both parties agree that USCIS has not made a determination on Petitioner's application.

The primary dispute in this case centers around the construction of the term "examination" in 8 U.S.C. § 1447(b), specifically, when the 120-day period begins. Petitioner argues that the term "examination" refers to the initial interview of the applicant by USCIS and that the statutory time frame begins at that time.  Respondents

view the term as a "multifaceted process," meaning that an examination has not occurred

and the 120-day period not begun until USCIS receives all of the requisite information,

including the results of all FBI background checks.

    This issue has generated a split among various courts, including courts within this

district. *Compare Danilov v. Aguirre*, 370 F. Supp. 2d 441 (E.D. Va. 2005) (Ellis, J.),

*and Martinez v. Gonzales*, 463 F. Supp. 2d 569 (E.D. Va. 2006) (Friedman, J.) (holding

that "examination" refers to a process) *with Manzoor v. Chertoff*, 472 F. Supp. 2d 801

(E.D. Va. 2007) (Smith, J.), *and Ahmed v. Gonzales*, 509 F. Supp. 2d 556 (E.D. Va. 2007)

(Lee, J.) (holding that "examination" refers to the initial interview by USCIS).

    "Statutory interpretation necessarily begins with an analysis of the language of the

statute." *In re Coleman*, 426 F.3d 719, 724–25 (4th Cir. 2005) (citing *Landreth Timber

Co. v. Landreth*, 471 U.S. 681, 685 (1985)).  This analysis is conducted "by reference to

the language itself, the specific context in which that language is used, and the broader

context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

    In this case, § 1447(b) states that the 120-day period begins "after the date on

which the examination is conducted." 8 U.S.C. § 1447(b).  By using the terms "date" and

"conducted," the statute contemplates that an "examination" is a singular event, the date

of the applicant's initial interview with USCIS. *See Etape v. Chertoff*, 497 F.3d 379, 386

(4th Cir. 2007) (noting that "[t]he 120-day period under § 1447(b) does not even begin to

run until after the initial naturalization examination").  Had Congress intended for

4

"examination" to refer to a more general process, it would have utilized language such as "completed or concluded." *See Walji v. Gonzales*, 500 F.3d 432, 436 (5th Cir. 2007). Therefore, this language indicates that an "examination" refers to a "distinct, single event." *Id.*; *see also id.* at 435 (noting that "the majority of courts addressing this issue have concluded that the term 'examination' in § 1447(b) refers to a discrete event—the agency's initial interview with the applicant—and that the 120-day period begins to run as of the date that interview is concluded").

This conclusion is further supported by examining the statute in context. Section 1446 outlines different procedures for the "investigation" and "examination" of applicants for naturalization indicating that the two terms are distinct. For example, prior to naturalization, "an employee of the Service, or of the United States designated by the Attorney General, shall conduct a personal investigation of the person applying for naturalization." 8 U.S.C. § 1446(a). The next subsection, however, requires the Attorney General to "designate employees of the Service to conduct examinations upon applications for naturalization." 8 U.S.C. § 1446(b). These employees are empowered to "take testimony," "administer oaths," and "to require by subpoena the attendance and testimony of witnesses." *See id.* Thus, "[w]hereas an 'examination' must be conducted by an employee of [US]CIS designated by the Attorney General, an 'investigation' may be conducted by an employee of [US]CIS or an employee of the United States the Attorney General designates." *Walji*, 500 F.3d at 436.

5

This section also states that the employee designated to conduct an examination "shall, *at the examination*, inform the applicant of the remedies available to the applicant under section 1447 of this title." 8 U.S.C. § 1446(b) (emphasis added).  This language further indicates that "examination" refers to a singular event, the interview of the applicant by USCIS.

Therefore, the 120-day period began following Petitioner's interview with USCIS on March 14, 2006.  Clearly, this period has elapsed without action from USCIS. Because of this "failure to make a determination," this Court possesses jurisdiction pursuant to 8 U.S.C. § 1447(b).[2]  Accordingly, Respondents' Motion to Dismiss is denied.

Petitioner also asserts that the Court possesses jurisdiction pursuant to the Mandamus Act and the Administrative Procedure Act.  Because this Court finds that it has jurisdiction pursuant to 8 U.S.C. § 1447(b), an analysis of these claims is unnecessary.

## B. Respondents' Motion to Remand

When a court possesses subject matter jurisdiction pursuant to § 1447(b), it "may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." 8 U.S.C. § 1447(b).  A properly filed petition provides

---

[2] The regulations promulgated pursuant to this statute appear to recognize this fact.  They require USCIS to "notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(b).

6

a district court with exclusive jurisdiction over a naturalization application. *See Etape*, 497 F.3d at 385. This fact, however, "does not 'require' a district court 'to expend' judicial resources, for § 1447(b) allows a district court to remand a case immediately to the [US]CIS if it so chooses." *Id.* at 387 (internal citation omitted). Indeed, the language of § 1447(b) merely provides for a "hearing on the matter" when the 120-day period elapses. *See* 8 U.S.C. § 1447(b).

Generally, a court "should remand a case to an agency for decision of a matter that statutes place primarily in agency hands. This principle has obvious importance in the immigration context." *INS v. Ventura*, 537 U.S. 12, 16–17 (2002); *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (noting that "judicial deference to the Executive Branch is especially appropriate in the immigration context"). As other courts have recognized, "the court is not equipped to conduct background checks of naturalization applicants." *Manzoor*, 472 F. Supp. 2d at 808. Even if the Court chose to determine Petitioner's application, it could not do so without the completion of these background checks.

Additionally, USCIS's failure to take action on Petitioner's application is based solely on the fact that it has not received the results of Petitioner's background checks. As the Fourth Circuit noted, "[w]hen the [US]CIS has good reasons for failing to act, certainly a district court has the option to remand the matter to give the agency additional time." *Etape*, 497 F.3d at 386 n.5. Further, by law, USCIS could not adjudicate

7

Petitioner's application until they had received the results of Petitioner's FBI background check.[3] *See* Pub. L. No. 105-119, Title I, 111 Stat. 2448, 2448–49 (1997) (codified at 8 U.S.C. § 1446 note). Accordingly, the Court finds that USCIS's failure to act on Petitioner's application is reasonable and that remanding the case to provide it with additional time would be appropriate.

Petitioner argues that if the Court remands the matter, the Court should provide a specific deadline for USCIS to adjudicate Petitioner's application. The Court agrees with the head of the FBI's name check section, however, in that "the consequence of the FBI's mission on homeland security requires that its name check process be primarily focused on providing accurate and thorough results." (Cannon Dec., ¶ 39, Jan. 11, 2008). Any artificial deadline imposed by this Court would undermine the ability of the FBI and USCIS to fully and adequately discharge their duties.

Accordingly, this Court grants Respondents' Motion to Remand and remands the case to USCIS to adjudicate Petitioner's application within a reasonable time upon its receipt of the results of Petitioner's background checks from the FBI.

---

[3] This act states:

> During fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed, except for those exempted by regulation as of January 1, 1997.

Pub. L. No. 105-119, Title I, 111 Stat. at 2448–49.

## IV. Conclusion

As noted by other courts, naturalization is, "appropriately, a goal that is not easily attained; the path is often long and arduous." *Laryea v. United States*, 300 F. Supp. 2d 404, 405 (E.D. Va. 2004). In this case, Petitioner has been diligent in his attempts to obtain citizenship. Naturalization, however, is "merely a privilege, not a right." *Marcantonio v. United States*, 185 F.2d 934, 937 (4th Cir. 1951) (quoting *Tutun v. United States*, 270 U.S. 568, 578 (1926)). Thus, the Court remands this case to USCIS for prompt adjudication following the receipt of Petitioner's background checks from the FBI. Petitioner, like many others similarly situated, must continue to wait.

An appropriate Order will accompany this Memorandum Opinion.

                                        /s/
                                   Henry E. Hudson
                                   United States District Judge

Date: March 7, 2008
Richmond, VA

9